```
 1      IN THE CIRCUIT COURT OF TIPPAH COUNTY, MISSISSIPPI

 2

 3   STATE OF MISSISSIPPI                           PLAINTIFF

 4   VS.                          CAUSE NO. TK2017-163

 5   JAMES ALLEN HUGHEY                             DEFENDANT

 6

 7

 8   **********************************************************

 9   TRANSCRIPT OF THE PROCEEDINGS HAD AND DONE IN THE

10   ABOVE-STYLED AND NUMBERED CAUSE, BEFORE THE

11   HONORABLE GRADY F. TOLLISON, CIRCUIT JUDGE, ON THE 26TH

12   DAY OF SEPTEMBER, 2023.

13   **********************************************************

14   APPEARANCES:

15           Present and Representing the Plaintiff:

16               HON. MASON WAGES
                 HON. THAD MUELLER
17               ASSISTANT DISTRICT ATTORNEY
                 102 NORTH CAMP AVENUE
18               NEW ALBANY, MISSISSIPPI 38652

19

20           Present and Representing the Defendant:

21               HON. JAMES D. WAIDE
                 WAIDE & ASSOCIATES
22               POST OFFICE BOX 1357
                 TUPELO, MISSISSIPPI 38802
23
                 HON. TYLER L. MOSS
24               MOSS LAW FIRM, PLLC
                 POST OFFICE BOX 2279
25               CORINTH, MISSISSIPPI 38835
```

1          (THE CIRCUIT COURT OF TIPPAH COUNTY,

2    MISSISSIPPI, WAS DULY AND LEGALLY CONVENED ON SEPTEMBER

3    26, 2023, AT 9:00 A.M.  THE FOLLOWING PROCEEDING TOOK

4    PLACE IN THIS MATTER, BEGINNING IN THE COURT'S

5    CHAMBERS:)

6              **THE COURT:**  All right.  We'll call up the

7              case of *State of Mississippi v. James Allen*

8              *Hughey*.  This is Tippah County Cause No.

9              TK2017-163.  Are you James Allen Hughey?

10             **DEFENDANT HUGHEY:**  Yes, sir.

11             **THE COURT:**  All right.  If you will, let's

12             have you sworn in for this record.  Just raise

13             your right hand and the court reporter will

14             swear you in.

15   (DEFENDANT SWORN)

16             **THE COURT:**  Okay.  Also, we did have a

17             mental evaluation.  I'm going to yield to the

18             State on that.

19             **MR. WAGES:**  Yes, Your Honor.  The State

20             filed a motion for a mental evaluation, which

21             was performed by the State Hospital.  The State

22             Hospital then tendered a report that has been

23             filed with the Court under seal.  The State

24             would proffer that the State Hospital found

25             Mr. Hughey to be competent to stand trial and

```
1        that he could aid and assist his attorney in
2        his defense.
3              I believe after speaking with defense
4        counsel, they're willing to stipulate to that
5        report.
6              MR. WAIDE:  We are, Your Honor.
7              THE COURT:  Okay.  This is a report that
8        was dated August 14th, 2023, pursuant to the
9        Rules of Criminal Procedure.  Under Rule 12.5,
10       the Court finds that the Defendant is competent
11       to stand trial and incorporate the findings of
12       the Mississippi State Hospital performed by R.
13       McMichael MD and Kathryn Olson, Psy.D.
14             MR. WAGES:  Yes, sir.
15             MR. WAIDE:  Yes, sir.
16             THE COURT:  All right.  We'll move
17       forward.  Mr. Hughey, the Defendant has filed a
18       petition to plead guilty to an indictment that
19       charges the Defendant of burglary of a
20       residential dwelling; is that correct?  And
21       you're filing this petition consistent with
22       that indictment to plead guilty to burglary of
23       a dwelling; is that correct?
24             DEFENDANT HUGHEY:  (Nodding head up and
25       down.)
```

1    **MR. WAIDE:** Say yes, sir.

2    **DEFENDANT HUGHEY:** Yes, sir.

3    **THE COURT:** Okay. I'm going to ask you

4    some questions today about this petition you

5    filed that I have -- the petition, I'm holding

6    on to that -- regarding rights you have and

7    what rights you'll be waiving or giving up by

8    pleading guilty.

9    I want to make sure that during this

10   process if at any time you have any questions

11   about what we're doing, any words I'm using or

12   do not understand something, please stop me and

13   let me know. I want to answer any questions

14   and resolve any problems that you may have

15   about this process. You may also consult with

16   your attorney at any time either in front of me

17   or in private. All you need to do is say I

18   need to talk to my attorney, okay?

19   **DEFENDANT HUGHEY:** (Nodding head up and

20   down.)

21   **THE COURT:** You understand that?

22   **DEFENDANT HUGHEY:** (Nodding head up and

23   down.)

24   **THE COURT:** I need a verbal yes or no.

25   **DEFENDANT HUGHEY:** Yes.

1        **THE COURT:** Okay. I want to make sure you

2        understand what you are doing by pleading

3        guilty and that you have voluntarily plead

4        guilty today. I do not want you to plead

5        guilty unless I'm satisfied and convinced you

6        understand the charge against you and

7        understand the rights you're giving up by

8        pleading guilty. I want you to further

9        understand the consequences of pleading guilty.

10        If for some reason I did not accept your

11        plea of guilty today and we later went to trial

12        on this matter, any statements or admissions

13        you might make today could not be used against

14        you at trial.

15        The court reporter is taking down

16        everything that we say today. So please be

17        sure to speak loud and clear after I ask you a

18        question so the court reporter can hear and

19        understand what you are saying. Do you

20        understand?

21        **DEFENDANT HUGHEY:** (Nods head up and down.)

22        Yes, sir.

23        **THE COURT:** Okay. Thank you. Mr. Hughey,

24        on the last --

25        **MR. WAIDE:** Your Honor, if the Court

1      please, could we have it reflect in the record

2      that both his attorney and his conservator are

3      present here with him?

4            **THE COURT:** Yes.

5            **MR. WAIDE:** And that I have advised him to

6      enter this guilty plea in his best interest,

7      and the district attorney has agreed to accept

8      it under the Alford decision. And his

9      conservator has also advised him to enter this

10     plea as being in his best interest, under the

11     Alford decision.

12           **THE COURT:** This is Alford, okay.

13           **MR. WAIDE:** Yes, sir.

14           **THE COURT:** Okay. Well, we'll go through

15     a litany of questions which I'll ask and you're

16     familiar with.

17           **MR. WAIDE:** Yes, sir. All right, sir.

18           **THE COURT:** So we'll get to that at a

19     point when we ask for a recitation of facts.

20           **MR. WAIDE:** All right, sir.

21           **THE COURT:** Okay. Mr. Hughey, on the last

22     page of your petition, there is a signature

23     midway down the page that purports to be your

24     signature. Did you sign this petition?

25           **DEFENDANT HUGHEY:** Uh-huh.

1        **THE COURT:**  I need you to speak yes or no.

2        **DEFENDANT HUGHEY:**  Yes.

3        **THE COURT:**  Okay.  Great.  And before you

4        signed the petition, did you go over the

5        contents of the petition with your attorney?

6        **DEFENDANT HUGHEY:**  Yes.

7        **THE COURT:**  And did your attorney explain

8        the contents of the petition to you and explain

9        it to you in a way that you understood the

10       petition?

11       **DEFENDANT HUGHEY:**  Yes.

12       **THE COURT:**  Did your attorney explain to

13       you what rights you have that you may be giving

14       up or waiving by pleading guilty today?

15       **DEFENDANT HUGHEY:**  Yeah.

16       **THE COURT:**  Did your attorney answer any

17       questions that you had about the petition?

18       **DEFENDANT HUGHEY:**  Yes.

19       **MR. WAIDE:**  Excuse me.  Your Honor, for

20       the record, he didn't ask any questions.

21       **THE COURT:**  Okay.  Did your attorney

22       explain everything about the facts and

23       circumstances that gave rise to this charge

24       being brought against you?

25       **DEFENDANT HUGHEY:**  I didn't understand

1       you.

2           THE COURT:  Did your attorney explain to

3       you about the facts of this case and why these

4       charges were brought against you, this charge?

5           DEFENDANT HUGHEY:  Yes.

6           THE COURT:  And did you tell your attorney

7       everything about the facts relating to this

8       charge?

9           DEFENDANT HUGHEY:  Yes.

10          THE COURT:  Okay.  In other words, you

11      haven't withheld any facts about this case from

12      your attorney?

13          DEFENDANT HUGHEY:  Nuh-uh, nothing

14      whatsoever.

15          THE COURT:  Okay.

16          MR. WAIDE:  Your Honor, let the record

17      reflect he's told me exactly what he thinks

18      happened that day.  He's told me that.

19          THE COURT:  Okay.  He answered that.

20      Thank you.  Are you fully satisfied with the

21      services and representations of your attorney?

22          DEFENDANT HUGHEY:  Yes.

23          THE COURT:  Do you believe your attorney

24      has properly advised you on your guilty plea?

25          DEFENDANT HUGHEY:  (No verbal response.)

1    **MR. WAIDE:** Excuse me. His question is do

2    you think that the attorney, that I have

3    properly advised you? I've told you, given you

4    proper advice; do you feel like I've properly

5    advised you?

6        **DEFENDANT HUGHEY:** Yes.

7        **THE COURT:** Okay. And do you believe your

8    attorney has properly represented you in this

9    case?

10       **DEFENDANT HUGHEY:** Yes.

11       **THE COURT:** All right. I want to make

12   sure you understand you have the right to plead

13   not guilty to any crime you've been charged

14   with. No one can force you to plead guilty.

15       If you plead not guilty, you have a right

16   to a speedy public trial before a jury of 12

17   people from Tippah County. That jury would

18   decide whether you are guilty or not guilty.

19       Additionally, the State of Mississippi,

20   who is represented by the district attorney's

21   office in this matter, has the burden of

22   proving you're guilty beyond a reasonable

23   doubt. It is never your burden to prove

24   yourself innocent. You have the presumption of

25   innocence.

1        If the Court accepts your guilty plea

2    today, you will give up or waive these rights.

3    Do you understand you're giving up these

4    rights?

5        **DEFENDANT HUGHEY:** Yes, sir.

6        **THE COURT:** And if you decided that you

7    wanted to go to trial, not only would the State

8    have to prove beyond a reasonable doubt that

9    you are guilty of the crime you've been charged

10    with but it would also be necessary that all 12

11    jurors vote guilty for you to be convicted of

12    the crime you've been charged with. If any one

13    or more of those jurors refuses to vote to find

14    you guilty then that particular jury cannot

15    convict you. But if you were found guilty by a

16    jury and convicted, you would have a right to

17    appeal that conviction to a higher court.

18        If you cannot afford to hire an attorney

19    to represent you in that appeal, then this

20    Court would appoint an attorney to represent

21    you at no cost to you. But if this Court

22    accepts your guilty plea today, except for some

23    very limited circumstances, you waive or give

24    up your right to an appeal. Do you understand

25    you're giving up these rights?

1    **DEFENDANT HUGHEY:** (Nods head up and

2    down.)

3    **MR. WAIDE:** Yes, sir.

4    **DEFENDANT HUGHEY:** Yes, sir.

5    **THE COURT:** If you decided that you wanted

6    to go to trial, you have the right to the aid

7    and assistance of an attorney. You have a very

8    capable attorney representing you and I have no

9    reason to expect you to be unhappy with their

10   services. If, however, you were unhappy with

11   your attorney and wanted to fire them but you

12   couldn't afford to hire another attorney to

13   represent you, all you would have to do is

14   demonstrate to this Court that you can't afford

15   an attorney and the Court would appoint an

16   attorney to represent you at no cost to you.

17   If you decided that you wanted to go to trial,

18   your attorney could assist you in a number of

19   ways. There are procedural rights that you

20   would have or that might come into play if you

21   went to trial. Your attorney would meet with

22   you before the trial and help you prepare your

23   case for trial. Your attorney would attend any

24   court hearings along with you that might be

25   held in connection with your case before trial.

1        Your attorney would also sit with you during

2        your trial and provide you advice and counsel

3        during the trial process. Among other things,

4        you and your attorney would be able to

5        cross-examine witnesses who would come to trial

6        and testify against you if it was appropriate

7        for you to cross-examine them. You could also

8        examine any witnesses that you wanted to bring

9        to your trial to testify for you. If you had

10        witnesses that you wanted at your trial but

11        they didn't want to voluntarily appear at court

12        for the trial, the Court would issue subpoenas

13        at your request and these subpoenas would force

14        or compel the attendance of those witnesses at

15        trial.

16        Finally, you have a right to testify at

17        your trial. You also have the right to remain

18        silent and not testify at your trial as to any

19        charges brought against you. But if the Court

20        accepts your guilty plea today, you will give

21        up or waive these rights. Do you understand

22        you're giving up these rights?

23        **DEFENDANT HUGHEY:** Yes, sir.

24        **CONSERVATOR, MS. HUGHEY:** Yes, sir.

25        **THE COURT:** All right. Do you understand

1   that by pleading guilty to the crime listed in

2   your petition you're admitting that you're

3   guilty of the crime listed in your petition

4   pursuant to the case of *Alford v. North*

5   *Carolina*?

6           **DEFENDANT HUGHEY:** Yes.

7           **THE COURT:** All right. Now, Mr. Wages,

8   what's the factual basis to -- excuse me. Let

9   me go back to my -- this is an *Alford v. North*

10  *Carolina* plea. Mr. Waide, I want to ask you if

11  you've explained the discovery from the State

12  that has been provided to the Defendant.

13          **MR. WAIDE:** All right. If the Court

14  please, this case consisted basically of

15  medical records and all that. And to the

16  extent that he has medical knowledge, he's gone

17  over all of those medical records.

18          **THE COURT:** Okay.

19          **MR. WAIDE:** So, yes, sir. We've seen the

20  discovery by the State and he knows what the

21  State's statements say.

22          **THE COURT:** All right. Mr. Wages, if you

23  would give a statement of the underlying facts

24  which the State would be able to prove beyond a

25  reasonable doubt.

1        **MR. WAGES:**  Yes, sir, Your Honor.  The

2    State would show that on or about the 7th day

3    of June 2017, here in Tippah County at 2661

4    Highway 4 West, which is located here in Tippah

5    County, the home of Amanda Mason, the victim in

6    this case, at that time she entered her home,

7    was tending to her ailing stepfather.  She

8    heard dogs barking and she went to investigate

9    the cause of the dogs barking and that's when

10   she noticed the Defendant, James Allen Hughey,

11   standing in her bedroom.  She panicked, shoved

12   him out of the house, called 911 and also

13   called her ex-husband, Tommy Mason, who arrived

14   at the scene and found Mr. Hughey on the

15   property and detained him.

16       **THE COURT:**  All right.  Thank you,

17   Mr. Wages.

18       Mr. Waide, do you and your client, the

19   Defendant, agree substantially to these facts

20   and statements just given that the State will

21   be able to prove these facts?

22       **MR. WAIDE:**  Yes, Your Honor.  The State

23   could show those particular facts that counsel

24   just suggested.

25       **THE COURT:**  Mr. Hughey, do you agree?

1   **DEFENDANT HUGHEY:** (No verbal response.)

2   **THE COURT:** Do you agree?

3   **DEFENDANT HUGHEY:** Yes.

4   **THE COURT:** And do you feel that if this

5   case went to trial it is highly probable that a

6   jury will return a verdict of guilty? Do you

7   agree, Mr. Waide?

8   **MR. WAIDE:** Your Honor, here's what I

9   would say. We certainly think that a finding

10  of guilty is a distinct possibility. It's a

11  very likely possibility.

12  **THE COURT:** Okay.

13  **MR. WAIDE:** And he has a minimum

14  three-year sentence to the extent that he

15  cannot afford to take any chance whatsoever.

16  And a finding of guilty, once a jury learns

17  he's in somebody else's home and he has no

18  legal excuse for being there, the returning of

19  a guilty verdict is highly likely. And given

20  his physical condition, he could not live or

21  survive in prison. So it is in his best

22  interest to enter a guilty plea regardless of

23  whether a jury would actually -- nobody knows

24  how this jury would rule.

25  **THE COURT:** Okay.

1    **MR. WAIDE:**  And for that reason, it's in

2    his best interest to plead guilty.

3        **THE COURT:**  All right.  And do you agree,

4    Mr. Hughey?

5        **DEFENDANT HUGHEY:**  Yes.

6        **THE COURT:**  All right.  And does the D.A.

7    agree it's highly probable?

8        **MR. WAGES:**  Absolutely.

9        **THE COURT:**  Mr. Hughey, I've been advised

10   by your attorney that you are requesting the

11   Court to allow you to enter what's called an

12   Alford plea and under the authority of the case

13   of *Alford v. North Carolina,* United States

14   Supreme Court case.  Did your attorney explain

15   an Alford plea to you and its purpose?

16       **DEFENDANT HUGHEY:**  Yeah.

17       **THE COURT:**  Okay.  This means that you

18   would like to plead guilty while at the same

19   time maintaining your innocence because you

20   have knowingly, intelligently and voluntarily

21   concluded that it is in your best interest to

22   plead guilty.  Do you understand what I just

23   explained to you?

24       **DEFENDANT HUGHEY:**  Yes, sir.

25       **THE COURT:**  And would you like to plead

1  guilty under an Alford plea while at the same

2  time maintaining your innocence because you

3  have knowingly, intelligently and voluntarily

4  concluded that it is in your best interest to

5  plead guilty?  Is that correct?

6    **DEFENDANT HUGHEY:**  Yes.  Correct.

7    **THE COURT:**  Okay.  And while you are not

8  admitting to committing this offense, you are

9  telling the Court that you recognize and agree

10  that the State of Mississippi has proof which

11  if presented to a jury in the trial of this

12  case would warrant a finding, a jury finding

13  you guilty of that offense; is that correct?

14    **DEFENDANT HUGHEY:**  Yes.

15    **MR. WAIDE:**  Your Honor, to be precise, we

16  believe it's highly possible and possibly

17  probable that the jury would find him guilty.

18    **THE COURT:**  Okay.  Are you currently under

19  the influence of alcohol, drugs or any other

20  substance that might impair or affect your

21  ability to understand what's going on here

22  today?

23    **DEFENDANT HUGHEY:**  No.

24    **THE COURT:**  Do you suffer from any

25  disability, physical, mental or otherwise that

18

1          might impair or affect your ability to

2          understand what's going on here today?

3                    **DEFENDANT HUGHEY:**  Yes.

4                    **MR. WAIDE:**  Yeah.  Your Honor, I think I

5          need to make this clear for the record.

6                    **THE COURT:**  Okay.

7                    **MR. WAIDE:**  His medical records indicate

8          that he's a chronic alcoholic, over two

9          decades, and that he also suffers from periodic

10         high ammonia levels which amounts to poisoning

11         in his blood in which he becomes incoherent and

12         basically doesn't know where he is or what he's

13         doing.  Any amount of stress from whatever

14         source can bring that on.

15                   So he's in a stressful environment right

16         now and he is more incoherent right now than he

17         was say when he was not under the pressure in

18         my office yesterday.

19                   **THE COURT:**  Okay.

20                   **MR. WAIDE:**  But he suffers from some

21         incoherence, which would have gone to our

22         defense but very well may have been rejected by

23         the jury.

24                   **THE COURT:**  Okay.

25                   **MR. WAIDE:**  But it would be malpractice,

1        in my opinion, for me to advise him to go to

2        trial knowing that he was caught in this lady's

3        house and was physically there and knowing also

4        there would be medical testimony that his

5        episodes that he experiences are quite possibly

6        the result of liver disease which has developed

7        over many years and which is related to his

8        alcohol use.

9        **THE COURT:**  Given the circumstances you

10       just described, are you able -- is he able to

11       understand what we're going through today?

12       **MR. WAIDE:**  He understands, Your Honor.

13       I'm satisfied that he understands that by

14       entering this Alford plea he avoids going to

15       jail.

16       **THE COURT:**  Okay.

17       **MR. WAIDE:**  And that if he doesn't enter

18       it the Court has no alternative but to sentence

19       him to a minimum of three years imprisonment if

20       he's convicted.  That's what he understands.

21       **THE COURT:**  Okay.

22       **MR. WAIDE:**  And his consistent report or

23       statement to me is that he does not want to go

24       to jail, as is his conservator, who is

25       extremely intelligent and thorough and has gone

1    through all his medical records as well.

2        **THE COURT:**  Okay.  Mr. Hughey, you've

3    heard that, your attorney?

4        **DEFENDANT HUGHEY:**  (Nodding head up and

5    down.)

6        **THE COURT:**  And is that correct?

7        **DEFENDANT HUGHEY:**  Yeah.

8        **THE COURT:**  Okay.

9        **MR. WAGES:**  And, Your Honor, if I could

10   add, we spoke with Dr. McMichael last week.

11   Dr. McMichael, we would suggest stated that the

12   Defendant has no mental defect that would

13   impair him going forward in trial or

14   understanding the nature and circumstances of

15   these proceedings.

16       **THE COURT:**  Okay.  All right.  Now,

17   Mr. Hughey, back to my question about has

18   anyone promised you anything, whether it's

19   money, reward, a lighter sentence or any other

20   kind of inducement to try to force you or

21   convince you or persuade you to plead guilty

22   today?

23       **DEFENDANT HUGHEY:**  Nuh-uh, no.

24       **THE COURT:**  Okay.  Has anyone threatened

25   you, intimidated you, coerced you or otherwise

EXHIBIT "A" - HUGHEY PLEA HEARING TRANSCRIPT

1        forced you to plead guilty today?

2          **DEFENDANT HUGHEY:**  No.

3          **THE COURT:**  All right.  And if the Court

4        accepts your guilty plea today, this crime will

5        go on your record as a felony.

6          You need to understand in Mississippi, we

7        have a law called the Habitual Offender Act,

8        also known as the Three Strikes Law or the

9        Three Times Loser Law.  There are similar laws

10        in many other states.  Under this law, if you

11        are charged with a third or subsequent felony

12        in your lifetime, if you're indicted as a

13        habitual offender and then convicted and the

14        Court finds you are a habitual offender, you

15        would then be sentenced to serve every day of

16        your sentence day for day without the

17        possibility of early release, probation or

18        parole.

19          If one or more of those felonies is a

20        crime of violence and you're indicted and

21        convicted as a habitual offender, you would

22        then be sentenced to serve the rest of your

23        life as a habitual offender in the state

24        penitentiary without the possibility of early

25        release, probation or parole.  In other words,

1            for a third or subsequent felony, the

2            punishment can be enhanced or made much worse.

3            Do you understand what I just explained to you?

4            **DEFENDANT HUGHEY:** (Nodding head up and

5            down), yes.

6            **CONSERVATOR, MS. HUGHEY:** Yes.

7            **THE COURT:** Okay. The Court expects to

8            receive a recommendation from the district

9            attorney's office as to a sentence this Court

10           might impose in exchange for your plea of

11           guilty. I want to make sure you understand the

12           Court is not obligated or required to follow

13           the recommendation. If I accept your plea of

14           guilty, I can sentence you to whatever period

15           of time the law allows me to as long as it's

16           between the minimum and maximum sentence. Do

17           you understand what I've just explained to you?

18           **DEFENDANT HUGHEY:** Yes.

19           **THE COURT:** And you know that the maximum

20           sentence for the crime you're pleading guilty

21           to is 25 years and a $10,000 fine and the

22           minimum sentence is three years. You

23           understand that?

24           **DEFENDANT HUGHEY:** Yes.

25           **THE COURT:** Okay. I've attempted to

1      question you thoroughly about your plea of

2      guilty, Mr. Hughey, to be satisfied you are

3      fully acquainted with your rights under the

4      authority of *Alford v. North Carolina*.  Do you

5      still wish to plead guilty?

6      **DEFENDANT HUGHEY:**  Yes.

7      **THE COURT:**  The Court finds there's

8      sufficient factual basis to sustain the charge

9      in the indictment against the Defendant, James

10      Allen Hughey.  The Court is of the opinion that

11      the Defendant is aware of the circumstances and

12      consequences of entering a plea of guilty.  The

13      Court is of the further opinion and finds the

14      Defendant has freely, knowingly and voluntarily

15      offered his plea of guilty under the authority

16      of *Alford v. North Carolina.*

17      It's the observation of the Court that as

18      the Defendant stands before the bench he is

19      capable and competent to understand the nature

20      of the charges against him and that he

21      understands the consequences of his offer to

22      plead guilty.  The Court having determined the

23      Defendant has freely, knowingly and voluntarily

24      done so accepts his plea of guilty under the

25      authority of *Alford v. North Carolina* and that

1    basis.

2         Does the State have a sentencing

3    recommendation?  We'll recess and then take

4    this up in the main courtroom after I dismiss

5    the jury.  Is that my understanding?

6         **MR. WAGES:**  Yes, sir, Your Honor.

7         **THE COURT:**  Okay.  Anything further?

8         **MR. WAIDE:**  I just need to get with the

9    D.A. on the sentencing recommendation.

10         **THE COURT:**  Yeah, yeah.

11         **MR. WAIDE:**  And it's my understanding that

12    there's going to be a victim impact statement

13    --

14         **THE COURT:**  Correct.

15         **MR. WAIDE:**  -- that she's going to make in

16    open court.

17         **THE COURT:**  Yes.

18         **MR. WAIDE:**  But not in the presence of the

19    jury?

20         **THE COURT:**  I'm going to go out here and

21    dismiss the jury.  Are we in agreement, the

22    State agrees on dismissing the jury?

23         **MR. WAGES:**  Yes, Your Honor.

24         **THE COURT:**  And from the Defendant?

25         **MR. WAIDE:**  Let me think a moment.

```
 1              MR. WAGES:  The recommendation is in the
 2         plea petition.
 3              THE COURT:  Yeah.
 4              MR. WAIDE:  Can we put the recommendation
 5         on record?
 6              THE COURT:  Yeah, yeah.  All right.  We'll
 7         have a formal recommendation but you can read
 8         that.
 9              MR. WAGES:  Sure.  Ten years in the
10         custody of the Mississippi Department of
11         Corrections with seven suspended, leaving three
12         to serve in the Intensive Supervision Program,
13         otherwise known as house arrest.  During that
14         time, he should pay all court costs.  There's
15         no fine.  There's a $150 D.A. assessment.  Upon
16         his release from house arrest, he would be on
17         up to five years supervised probation.  And,
18         Your Honor, as previously noted, the State
19         requests an opportunity either for a
20         presentencing hearing or a victim's impact
21         statement, ever how the Court wants to style
22         it.
23              MR. WAIDE:  Let me just make a couple of
24         things.  It's our understanding this is going
25         to be done today, not at some later time.
```

```
1              MR. WAGES:  We would prefer to do it
2         today.
3              MR. WAIDE:  And we also understand that
4         the State won't have any objection including in
5         the order that he can leave the state for
6         medical purposes and we can include that in the
7         Court's order in case he gets a hard time.
8              MR. WAGES:  We have no objection.
9              THE COURT:  Let me ask this question about
10        leaving the state.  Do we have specific doctors
11        that we attend to right now?
12             MR. WAIDE:  Answer that, please.
13             THE COURT:  I'm asking the conservator.
14        And your name is?
15             CONSERVATOR, MS. HUGHEY:  Karen.
16             THE COURT:  Ms. Karen what?
17             CONSERVATOR, MS. HUGHEY:  Hughey.
18             THE COURT:  Ms. Hughey, okay, what are the
19        doctors that Mr. Hughey visits?
20             CONSERVATOR, MS. HUGHEY:  Oh, gosh, he has
21        a whole lot.
22             THE COURT:  Okay, if there's a lot of
23        them, but there's specific appointments that
24        you have to go to every -- different times of
25        the month?
```

EXHIBIT "A" - HUGHEY PLEA HEARING TRANSCRIPT

1      **CONSERVATOR, MS. HUGHEY:**  The only one

2      that's going to be out of Ashland would be

3      Corinth.

4      **THE COURT:**  Okay.  That's in the state.

5      But I'm talking about Memphis particularly.

6      **DEFENDANT HUGHEY:**  That's only if he has

7      to go for certain testing, when he has --

8      that's whenever a certain doctor will order

9      that.

10      **THE COURT:**  Where is the testing?  What

11      facility?  Hospital?

12      **CONSERVATOR, MS. HUGHEY:**  No.  It's not a

13      hospital.  It's just a doctor's office there.

14      **THE COURT:**  Okay.  So that's the only time

15      he has to go to Memphis?

16      **CONSERVATOR, MS. HUGHEY:**  Yes, sir.

17      **THE COURT:**  All his other healthcare

18      providers are in the State of Mississippi?

19      **CONSERVATOR, MS. HUGHEY:**  Yes, sir.

20      **MR. WAIDE:**  One other thing.  As I

21      understand, they live in Benton County and he

22      would report to the probation officer in

23      Ashland, correct?

24      **MR. WAGES:**  Well, that's sort of out of

25      our hands.

EXHIBIT "A" - HUGHEY PLEA HEARING TRANSCRIPT

1    **THE COURT:** Yeah, it is. But

2    traditionally, that's the case. I mean, we

3    can't speak to that because it turns over to

4    the authorities of the MDOC.

5    **MR. WAIDE:** Here's the issue though. She

6    works and the father who would have to take him

7    when she's at work is 88 years old.

8    **CONSERVATOR, MS. HUGHEY:** He can't

9    drive -- now, my father could drive in Ashland

10   because we only live like three miles from

11   there, so my dad could take him there.

12   **MR. WAIDE:** Could we put it in the order

13   and if they say they don't have to follow it,

14   we'll deal with it, that she can be --

15   **THE COURT:** I can do a 365-day right of

16   review and just review. I'll hold a 365-day

17   right of review over the sentencing order and

18   we'll revisit it if we have to deal with

19   probation.

20   **MR. WAGES:** To the extent the State has

21   any authority in dictating MDOC guidelines, we

22   will be happy to do so.

23   **THE COURT:** Yeah, exactly. Let me get

24   with --

25   **MR. WAIDE:** We understood he reports to

```
 1            the county where you live.
 2                 THE COURT:  Okay.
 3            (BRIEF PAUSE FOR THE COURT TO CONFER WITH MDOC
 4  OFFICER.)
 5                 THE COURT:  Janice, who is right next
 6            door.
 7                 MR. WAGES:  Probably.
 8                 THE COURT:  Janice Fortner.
 9                 MR. WAGES:  She'll probably do the intake,
10            Judge, but Brad Benton is the house arrest
11            officer.
12                 MR. WAIDE:  Are you saying she's here
13            today?
14                 THE COURT:  Yeah, yeah.  So y'all can talk
15            to her about the specifics.
16                 MR. WAIDE:  We can talk to her.
17                 THE COURT:  Although your house arrest --
18                 MR. WAGES:  Brad Benton.
19                 THE COURT:  Brad Benton, yeah.  Actually,
20            he'll be reporting because it's house arrest.
21                 MR. WAGES:  Right.  But since Janice is
22            here, she may be able to do the intake.
23                 THE COURT:  She may be able to give them
24            more information than we have.
25                 MR. MOSS:  And tell them when to report.
```

```
1              MR. WAIDE:  Excuse me.  He'll only end up
2         seeing one probation officer?
3              MR. WAGES:  Right.  But, I mean, she's
4         here to get the initial paperwork started and
5         she'll give him a time to meet with Brad
6         Benton.  It won't be today, it will be a later
7         day to get him in for all the monitoring and
8         all that stuff.
9              CONSERVATOR, MS. HUGHEY:  So he won't have
10        to see two people?
11             THE COURT:  No, no.
12             MR. WAGES:  See Brad Benton.
13             THE COURT:  But I'll keep a 365-day -- I
14        do that as a matter of course, keep a 365-day
15        right of review to make sure this works out.
16             MR. WAIDE:  I see.
17             THE COURT:  All right.
18             MR. WAIDE:  All right.  So after you
19        excuse the jury, we're going out?
20             THE COURT:  Yeah.  Or I can go ahead and
21        do this and make the victim's impact statement,
22        just give him the sentencing and then have the
23        victim's impact statement afterwards.
24             MR. WAGES:  That's fine with the State.
25             THE COURT:  All right.  Mr. Hughey, in
```

1    exchange for your plea of guilty, the Court is

2    going to accept the State's sentencing

3    recommendation which will be included in your

4    sentencing order and judgement.  The Court

5    hereby sentences you to ten years in the

6    custody of the Mississippi Department of

7    Corrections, with the execution of seven years

8    suspended, leaving three years to serve, which

9    will be served on house arrest, also known as

10   the Intensive Supervision Program with the

11   Mississippi Department of Corrections.  Upon

12   your release from house arrest, you'll be

13   placed on five years of post-release

14   supervision.  You'll have to report to a

15   probation officer and abide by the terms and

16   conditions of that probation.  You'll be

17   ordered to pay court costs, no fine, and $150

18   district attorney's assessment.  Totals

19   estimate -- well, they'll figure that out, the

20   clerk will figure out the total estimated.

21        Additionally, the Court will place in the

22   order that you are allowed to visit for testing

23   purposes Memphis, Tennessee, to conduct those

24   tests and the additional order that we were

25   going to put in there about the phone.

1               **MR. MOSS:**  Your Honor, I gave Mr. Mueller

2        Karen's number and their father's number.  She

3        also provided me with the mother's number, but

4        he was going to definitely put Ms. Hughey and,

5        I think, James' father's number in the order so

6        that the probation could call them if they

7        couldn't get ahold of Mr. Hughey.

8               **CONSERVATOR, MS. HUGHEY:**  Yeah.  Because

9        when I work, I can't answer my phone at work,

10       But my father is able to answer.

11               **THE COURT:**  Does he have a landline or

12       mobile phone?

13               **CONSERVATOR, MS. HUGHEY:**  They have both.

14       We're going to have to check the landline

15       though because a lot of people have been trying

16       to call it and it keeps saying the voice

17       mailbox is full and we don't have that.  So,

18       we're going to have to contact AT&T.

19               **THE COURT:**  Well, you can get probation to

20       work that out.

21               **MR. MOSS:**  But Mr. Mueller was putting

22       that in the order, Your Honor.

23               **THE COURT:**  Great.

24               **MR. MOSS:**  I think that was the last item

25       of business.

1    **THE COURT:** Okay. So at this time, I'm

2    going dismiss the jury. Everybody agreeable

3    with that?

4    **MR. WAIDE:** Yes, sir.

5    **MR. WAGES:** Yes, sir.

6    **THE COURT:** Okay. And then we'll come

7    back and have the victim impact statement.

8    **MR. WAIDE:** And reconvene in the

9    courtroom?

10    **THE COURT:** Yeah. We'll reconvene in the

11    courtroom.

12    (AFTER A BRIEF PAUSE, THE PROCEEDING CONTINUED

13 AS FOLLOWS IN OPEN COURT:)

14    **THE COURT:** All right. Ladies and

15    Gentlemen, I appreciate your patience. Y'all

16    have been more than patient. These things

17    happen. You've got to understand it's always

18    fluid. But in this particular case, we were

19    ready to go to trial, but this matter has been

20    resolved.

21    And I want to tell you, I don't usually

22    have this time to tell y'all, and I'm going to

23    be very quick, I promise you, and then you can

24    be dismissed and head to lunch. My name is

25    Gray Tollison. I serve as one of your circuit

1        judges and I am -- you say I'm from Oxford, you

2        know, city boy.  Well, my dad was born in Dry

3        Creek, Mississippi.  And I saw somebody that

4        lives on County Road 600 and that's where he

5        was born.  He was born in 1937, so a long time

6        ago.  I can't tell you how many times I hear

7        stories we didn't have electricity, blah, blah,

8        blah, and it's true.  But a lot of my people

9        are buried actually on the other side of Dry

10       Creek in Prentiss County, Jumpertown.  Is it

11       Methodist or Baptist, the church right there as

12       you cross the county line?

13           I know there's a Jumper in here.  I'm

14       related to Jumpers, Hodges, Davises and

15       Tollisons, obviously.  I think my dad's first

16       cousin just got elected over in Prentiss County

17       for supervisor.

18           But Gray Tollison, I've got good news for

19       you.  You don't have to come back in.  You are

20       hereby dismissed.  They'll send you a check.

21       It will be in the mail in a couple of weeks for

22       your mileage or for your per diem today.

23           Okay.  Leave the fan on the table, on the

24       bench?

25           **THE DEPUTY CLERK:**  On the bench.

1          **THE COURT:**  Leave your fan on the bench.

2      You're hereby dismissed.  Have a good day.

3      Thank you so much.

4      (BRIEF PAUSE TO DISMISS JURY VENIRE.)

5          **THE COURT:**  Let me just state for the

6      record, we're back on record in *State v. James*

7      *Allen Hughey.*  We've called a jury in.  The

8      parties were able to resolve this and get a

9      plea agreement and we took a plea agreement

10     from Mr. Hughey in chambers with the

11     recommendation of the State on the sentence and

12     so we are currently -- we dismissed the jury,

13     the Court dismissed the jury and now we're back

14     in the courtroom and I'll recognize the State

15     as we proceed.

16         **MR. WAGES:**  Thank you, Your Honor.  May I

17     proceed?

18         **THE COURT:**  Yes, sir.

19         **MR. WAGES:**  We'd call Amanda Mason, Your

20     Honor.

21         **THE COURT:**  All right.  Ms. Mason, you can

22     come forward.  At this point, we're going to

23     have a victim's impact statement in this

24     matter.  You can make a statement from the

25     podium or --

1          **MS. MASON:**  Oh, okay.  It doesn't matter.

2          **MR. WAGES:**  Whatever you want to do.

3          **MS. MASON:**  Okay.  I'll just stand right

4     here.  I'll speak directly to you.  The day

5     that you came in my house, you did not know

6     where you were at.  You did not know me.  As a

7     matter of fact, when I asked you, I said, "Who

8     are you, why are you in my house, get out of my

9     house", you said, "Who are you".  You did not

10    know who I was.  You did not know where you

11    were at.

12         I don't know why you were in my house, but

13    you have caused my family a lot of trauma.  Me,

14    you scared me and my dad to death.  My dad who

15    is now deceased, scared him to death

16    completely.  He couldn't even get up out of his

17    chair because he'd already been ran over so he

18    couldn't get up to help me.  You then try to

19    bust back in my house.  When you couldn't get

20    in that way, you come around and try to bust

21    through the window.  I don't know why you were

22    there, but you caused me a lot, a lot of

23    trauma.  Not only mine, my ex-husband and his

24    family.

25         All the lies that you have told, all the

1    lies that your family has told, you know that
2    you don't know me.  I don't know you.  You
3    might know my other two sisters, but there's
4    three of us, not two.  There's three of us.  Do
5    you know me?  No.  No, you do not know me.
6    I've never met you before.  I have never met
7    you before.
8         But I just want you to know that you have
9    caused a lot -- my daughter still, 18 years
10   old, gets up in the middle of the night to make
11   sure the doors are locked at 18.  She was 11,
12   12 years old when this happened.
13        Whatever happens, I pray that you do not
14   get to go anywhere else, do this to anybody
15   else, break into anybody else's home like you
16   did mine.
17        I'm standing up here shaking.  I have not
18   seen you, I have not seen your family around
19   because I don't know who your family is.  I do
20   not know y'all.  My sister Brandi, my sister
21   Colleen might know you, but I don't know you.
22        And as far as you coming over there
23   wanting to see my father after he -- that was
24   all, all the lies that you told, you even --
25   the news, you brought it to the news, told all

1    the lies to -- and it's ridiculous, ridiculous
2    what my family went through, what my
3    ex-husband's family went through.  I just pray,
4    I pray for you.  I pray for your family.  I
5    pray that this -- that you just never do this
6    again, never do this to anybody else.  It was
7    wrong.  You know it was wrong.  I don't know
8    why you were there, but you know that it was
9    the wrong thing to do.  I'm done.
10        **THE COURT:**  Thank you, Ms. Mason.
11   Anything further from the State on any other
12   matter?
13        **MR. WAGES:**  No, Your Honor.
14        **THE COURT:**  All right.  Anything from the
15   Defendant's counsel?
16        **MR. WAIDE:**  No, sir.  We don't have
17   anything to say.  We think under the rules
18   she's entitled to say whatever she wants to.
19        **THE COURT:**  All right.  So now you're
20   going to present a sentencing order?
21        **MR. MUELLER:**  I've sent it to Ms.
22   Benefield.
23        **THE COURT:**  Okay.  So at this time, we'll
24   stand adjourned.
25             * * * COURT ADJOURNED * * *

39

<u>**CERTIFICATE OF COURT REPORTER**</u>

STATE OF MISSISSIPPI

COUNTY OF TIPPAH

       I, Kathy C. Bruce, BCR, CRR #1168, one of the Official Court Reporters for the Third Circuit Court of the State of Mississippi, do hereby certify that to the best of my skill and ability I have reported the proceedings had and done in the GUILTY PLEA of *STATE OF MISSISSIPPI v. JAMES ALLEN HUGHEY,* being No. TK2017-163 on the docket of the First Judicial Circuit Court of Tippah County, Mississippi, and that the foregoing 38 pages contain a true, full and accurate record of my stenographic notes taken in said proceeding.

       I do further certify that my certificate annexed hereto applies only to the original and certified transcript. The undersigned assumes no responsibility for the accuracy of any reproduced copies not made under my control or supervision.

       This the 5th day of October, 2023.

                    /S/ Kathy C. Bruce

                    KATHY C. BRUCE

(SEAL)

My Commission Expires:
<u>March 6, 2026</u>