**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**KAREN HUGHEY,**
**Conservator for James Allen Hughey** **PLAINTIFF**

**V.** **CIVIL ACTION NO: 3:18-CV-4-GHD-RP**

**TIPPAH COUNTY, MISSISSIPPI,**
**TOMMY MASON, in His Individual Capacity,**
**and "X" Bonding Company** **DEFENDANTS**

---

**PLAINTIFF'S MEMORANDUM BRIEF IN OPPOSITION TO DEFENDANT TIPPAH COUNTY, MISSISSIPPI'S MOTION FOR JUDGMENT ON THE PLEADINGS [DOC. 157]**

---

Plaintiff Karen Hughey, Conservator for James Allen Hughey, submits this Memorandum Brief in Opposition to Defendant Tippah County, Mississippi's Motion for Judgment on the Pleadings [Doc. 157], and shows the Court the following:

## I. INTRODUCTION, FACTS, AND STANDARD OF REVIEW

This case is before this Court on Defendant Tippah County, Mississippi's ("Defendant County") Rule 12(c) Motion for Judgment on the Pleadings. A Rule 12(c) Motion for Judgment on the Pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss. *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256 (5th Cir. 2022).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In conducting a review, a court considers only the allegations in the complaint, matters of

public record, and any documents attached to the complaint. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).

"[T]he court accepts "all well-pleaded facts as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1162 (5th Cir. 2021), quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc).

A motion to dismiss must not be granted if the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 570. A "motion should be denied if the facts in the complaint, when taken as true, 'raise a right to relief above the speculative level.'" *Spiller v. Harris Cnty., Texas*, 113 F.4th 573, 576 (5th Cir. 2024).

"This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Jenkins v. Rankin Cnty., Mississippi*, 2024 WL 3526903, *3 (S.D. Miss. 2024), quoting *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556)).

"Plaintiffs have the burden to allege sufficient facts but not to correctly state their legal theories in their complaint." *Jenkins*, 2024 WL 3526903, at *3, quoting *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016).

Since the facts alleged in the first amended complaint are taken as true, Hughey quotes, verbatim, the facts in the complaint, which are relevant to Defendant County's present Motion for Judgment on the Pleadings.

> 4. For a substantial period of time before June 6, 2017, Defendant Mason, acting under color of his office as a Deputy Sheriff, had engaged in activities which either alerted the Sheriff of Defendant Tippah County or, except for gross negligence by the Sheriff, would have alerted the Sheriff, to Defendant Mason's propensity for unreasonable use of force. The previous incidents

include:

A. Defendant Mason's ex-wife, Amanda Mason, a/k/a Amanda Crumpton, alleged that Defendant Mason had beaten her. Amanda Mason attempted to obtain law enforcement assistance from Defendant Tippah County, and resided briefly at James Hughey's home out of fear of Defendant Mason;

B. Defendant Mason had beaten a man named Joseph Smithey based upon a rumor that Smithey was engaged in a relationship with Defendant Mason's ex-wife;

C. Defendant Mason had struck an arrestee, April Johnson, in the mouth, and slammed her head on a truck, knocking out several teeth;

D. Defendant Mason had broken the nose of Kristen Hopkins;

E. Defendant Mason had beaten a sixteen (16) year old undocumented immigrant, Jamie Guerrero;

F. Defendant Mason had beaten Richey Beeler;

G. Defendant Mason had been involved in a police killing of a suspect in Dumas, Mississippi. Defendant Mason had bragged that he had "finished off" the suspect after another officer had shot him;

H. Defendant Mason had beaten Jeremy Palmer; and

I. Defendant Mason had beaten Brian Lansdale.

These acts demonstrate that Defendant Mason's unreasonable use of force constitute Defendant County's custom and policy of violating the Fourth Amendment prohibition against unreasonable use of force. The Sheriff knew or reasonably should have known of the above assaults. The retention of Defendant Mason demonstrates a willful indifference to the use of unreasonable force by the Sheriff of Tippah County, who is Defendant County's official law enforcement policymaker.

5. There is substantial reason to believe that Defendant Mason was involved in unlawful drug activity by using steroids. Defendant Mason has extreme muscular development. Defendant Mason frequents a gym known for steroid-induced muscle-building.

6. Because of a combination of the numerous incidents of unreasonable force and likelihood that Defendant Mason was utilizing performance-enhancing steroid, which are known to cause rage, Defendant County, acting through its Sheriff, must have known that Defendant Mason was unfit for law enforcement. Defendant Mason should not have been retained as a law enforcement officer. Failure to discharge Mason proximately caused James Hughey's injuries, and renders Defendant County liable under 42 U.S.C. § 1983.

7. James Hughey suffers from a number of serious medical conditions, including diabetes, liver disease, and periodic episodes of ammonia poisoning. These conditions sometimes cause James Hughey to become disoriented and be unaware of where he is or what he is doing.

8. On or about June 6, 2017, James Hughey went to a home where his ex-girlfriend Brenda Crumpton formerly resided. At that time, the home was occupied by his ex-girlfriend's sister, Amanda Mason, Amanda Mason's child, and Amanda Mason's father.

9. James Hughey, in a confused state, consistent with ammonia poisoning, entered Amanda Mason's home. Amanda Mason called her ex-husband, Defendant Mason, who arrived on the scene and kicked and beat James Hughey, fracturing several ribs and endangering his life by rupturing James Hughey's spleen.

10. Another officer was then dispatched to the scene and transported James Hughey to the Tippah County Jail. A jailor caused James Hughey to be placed in the drunk tank, apparently because James Hughey smelled of alcohol. James Hughey's family learned from Mason family members that Defendant Mason had beaten James Hughey. James Hughey's family then went to the jail and persuaded jail authorities to take James Hughey to the Tippah County Hospital.

11. At the Tippah County Hospital, James Hughey was treated by Dr. John Preece, who found multiple fractured ribs and a ruptured spleen. Dr. Preece considered James Hughey's life to be in danger and directed that he be transported to The Med in Memphis, Tennessee, where James Hughey was hospitalized and incurred medical bill.

12. Defendant Mason's beating of James Hughey constituted unreasonable use of force in violation of the Fourth Amendment to the United States Constitution. It also constituted assault and battery, which is a crime under State law.

13. Following the beating, the Sheriff knew, or reasonably should have known,

that Defendant Mason was guilty of the beating. Nevertheless, Defendant County, through its Sheriff, ratified Defendant Mason's acts by retaining him as a law enforcement officer, and by insisting upon a continued criminal prosecution for the burglary for which James Hughey was indicted.

14. Although James Hughey was unaware of it, he had been indicted for burglary before he filed the present suit. The indictment was not served, however, until after James Hughey commenced the present suit. The indictment resulted in James Hughey's action being delayed for over six (6) years, while numerous continuances were had in the criminal prosecution. Because burglary, under state law, carries a minimum three (3) year prison sentence, because James Hughey's health condition was so poor any imprisonment would likely cause his death, James Hughey could not risk going to trial. Upon advice of his Conservator, he entered an *Alford* plea of guilty. Pursuant to a plea bargain agreement, James Hughey was given a suspended sentence with house arrest. James Hughey's mental state and inability to know where he was or what he was doing, posed several defenses in the criminal case. James Hughey entered a guilty plea not because he was guilty, but because he could not risk even a slight chance of conviction.

15. As the official law enforcement policymaker for Tippah County, the Sheriff ratified the beating by continuing to retain Defendant Mason as a law enforcement officer, and not disciplining him for the beating of James Hughey.

16. Plaintiff, therefore, sues and requests actual and punitive damages against Defendant Mason, individually, in an amount to be determined by a jury, for violation of James Hughey's Fourth and Fourteen Amendment rights, and for assault and battery against Defendant Mason under state law. Plaintiff requests actual damages against Defendant Tippah County, Mississippi.

17. Plaintiff is not required to plead legal theories. Nevertheless, out of an abundance of caution and without waiving the contention that legal theories need not be pled, Plaintiff pleads the following legal theories:

A. Defendant Tommy Mason is liable to Plaintiff for actual and punitive damages for an unreasonable seizure of his person and use of excessive force, in violation of the Fourth Amendment of the United States Constitution;

B. Defendant Tippah County, Mississippi is liable to Plaintiff for ratifying the constitutional violation made against Defendant Mason, by retaining Defendant Mason, not disciplining Defendant Mason, and continuing to prosecute James Hughey after Defendant Mason's criminal assault upon James Hughey

was known. These acts were the official policy acts of Defendant County since these acts were carried out by the Sheriff of Tippah County, Mississippi, acting in his official law enforcement capacity;

C. Defendant Tippah County, Mississippi is liable because Defendant Mason's repeated assaults makes assaults a custom of Defendant Tippah County, Mississippi; and

D. Defendant Tommy Mason is liable to Plaintiff for assault and battery in violation of state law.

First Amended Complaint [Doc. 112].

## II. ARGUMENTS

### A. THIS ACTION IS NOT BARRED BY *HECK V. HUMPHREY*, 512 U.S. 477 (1994).

Defendant County's first argument is that this case is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* held that a 42 U.S.C. § 1983 action cannot be brought when it would imply the invalidity of a criminal conviction. *Heck* was a malicious prosecution suit based upon acts for which the plaintiff was criminally convicted. The Court held: "One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused. . . A claim for damages [inconsistent with the fact of a criminal conviction] is not cognizable under § 1983." *Heck*, 512 U.S. at 484, 487.

In this case, however, Hughey's allegations are not inconsistent with his guilty plea to burglary.

Paragraph 17(a) of the first amended complaint alleges: "Defendant Tommy Mason is liable to Plaintiff for actual and punitive damages for an unreasonable seizure of his person and use of excessive force, in violation of the Fourth Amendment of the United States Constitution. . . ." [Doc. 112]. Proving that there was an "unreasonable seizure of [James Hughey's] person" or that there

was "use of excessive force" or that there was an assault, which are the allegations in the first amended complaint, is not inconsistent with James Hughey' entry of an *Alford* plea to burglary.

The State prosecutor, stating the factual basis for the plea, stated:

> The State would show that on or about the 7th day of June 2017, here in Tippah County at 2661 Highway 4 West, which is located here in Tippah County, the home of Amanda Mason, the victim in this case, at the time she entered her home, was tending to her ailing stepfather. She heard dogs barking and she went to investigate the cause of the dogs barking and that's when she noticed the Defendant, James Allen Hughey, standing in her bedroom. She panicked, shoved him out of the house, called 911 and also called her ex-husband, Tommy Mason, who arrived at the scene and found Mr. Hughey on the property and detained him.

*See* Exhibit A, Hughey Plea Hearing Transcript, to Defendant County's Motion for Judgment on the Pleadings, p. 14 [Doc. 157-1].

"A threshold question for a *Heck*-type analysis is whether a successful § 1983 suit would necessarily imply the invalidity of a criminal conviction." *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001). The fact Defendant Mason committed an aggravated criminal assault against James Hughey does not call into question James Hughey's criminal conviction for burglary to Defendant Mason's ex-wife's home.

For *Heck* to apply, it must be demonstrated that the criminal conviction and liability under the civil suit are "logically contradictory." *Dyer v. Lee*, 488 F.3d 876, 884 (11th Cir. 2007). Rather than being "logically contradictory," Defendant Mason's beating James Hughey is consistent with his having found James Hughey at his ex-wife's home.

Indeed, the fact that James Hughey has broken into Defendant Mason's ex-wife's home is relevant to show that Defendant Mason beat James Hughey because James Hughey's being inside the home demonstrates motive on the part of Defendant Mason.

The claims in Hughey's first amended complaint, alleging an "unreasonable seizure of his

person," "use of excessive force," and state law assault [Doc. 112] are "conceptually distinct" from James Hughey's burglary conviction. The claims are, thus, not barred by *Heck*. *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). According to *Bush*, whether *Heck* bars a 42 U.S.C. § 1983 claim requires the court to "focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Bush*, 513 F.3d at 497.

*Ballard v. Burton,* 444 F.3d 391, 398 (5th Cir. 2006) held that the fact that the plaintiff had been convicted of assault through an *Alford* plea did not foreclose the possible liability for a civil rights claim that the officer had used excessive force. *Ballard* is, thus, indistinguishable from this case.

Defendant County misunderstands *North Carolina v. Alford*, 400 U.S. 25 (1970). A plea under *Alford* is entered precisely because a defendant believes that a conviction is highly likely and justifies the decision to enter a guilty plea in order to avoid a conviction and imprisonment. When one enters an *Alford* plea, he is doing so despite his denial of guilt. *Alford* held: "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Alford*, 400 U.S. at 37.

This is an especially appropriate case for an *Alford* plea since James Hughey had no memory of crucial events, but faced a minimum of three (3) years imprisonment if he plead guilty after a trial. *See* Petition of Defendant for Court to Accept Plea in *State v. Hughey*, Tippah County Circuit Court No. 2017-163, Exhibit "A"; Plea of Guilty and Judgment of Court in *State v. Hughey*, Tippah County Circuit Court No. 2017-163, Exhibit "B"; and Indictment for Burglary in *State v. Hughey*, Tippah County Circuit Court No. 2017-163, Exhibit "C."

### B. DRAWING INFERENCES IN HUGHEY'S FAVOR AND ACCEPTING THE PLED FACTS WHICH FAVOR HUGHEY, HUGHEY HAS MADE A PLAUSIBLE CLAIM THAT DEFENDANT COUNTY IS LIABLE BECAUSE OF CUSTOM AND RATIFICATION.

Defendant County makes several arguments as to why the first amended complaint states no claim against it.

A major component of Defendant County's motion is that it cannot be liable because this Court has determined that Defendant Mason is immune from any claim of use of excessive force. Defendant County relies upon this Court's holding, that "Plaintiff's version of facts, as described in the complaint, leave major gaps regarding Mr. Hughey's own conduct." [Doc. 131, p. 7].

Further, according to the Court: "Plaintiff must plead facts about his own actions during the apprehension so the Court can assess whether the Officer []employed force that was disproportionate to the need." Defendant County's Memorandum of Authorities in Support of Its Motion for Judgment on the Pleadings (Defendant County's Brief), p. 12 [Doc. 158], quoting this Court's opinion granting qualified immunity to Defendant Mason at p. 7 [Doc. 131].

While Defendant County has succeeded in obtaining immunity for Defendant Mason on the excessive force claim, this Court may modify its findings at any time before a final judgment. FED. R. CIV. P. 54(b); *Renfroe v. Parker*, 2019 WL 3806641, *1 (S.D. Miss. 2019), aff'd, 974 F.3d 594 (5th Cir. 2020).

Hughey's *Schultea* court-ordered reply's [Doc. 27] explains why James Hughey did not make more specific allegations about his own conduct, and would, in itself, justify this Court in modifying its previous ruling.

Hughey's court-ordered reply states:

> Hughey did not provoke the beating. Because of Hughey's pre-existing health problems, and as a result of the trauma from the beating, Hughey has no substantive

> memory of the events after the beating. Hughey knows that Mason hit him multiple times with his fists. Hughey does not remember the other details of the assault as far as the means employed by Mason to inflict injury. Hughey is a diabetic and suffers from elevated ammonia levels. As a result of this, and the beating, Hughey simply remembers that he knocked on the door, that Mason answered the door, and that Mason began beating him with his fists for no reason.

*Schultea* Reply to Qualified Immunity Defense, p. 2 [Doc. 27], as ordered by this Court on July 2, 2018 (emphasis added).

In this reply, Hughey has given a reasonable explanation as to why the pleading was not more specific as to James Hughey's actions. However, drawing all inferences in Hughey's favor, if he only opened the door when Defendant Mason began beating him, this was a sufficient statement of his own actions. James Hughey would not have acted in good faith, as required by FED. R. CIV. P. 11, if he made up facts about his own conduct when he does not remember such facts.

Furthermore, there is recent authority, that a heightened pleading requirement, such as, for example, requiring a detailed pleading about a plaintiff's actions, does not apply even in the context of a qualified immunity defense. *Jenkins v. Rankin Cnty., Mississippi*, 2024 WL 3526903, *3 (S.D. Miss. 2024), citing *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020).

Assuming, however, that this Court adheres to its opinion with respect to qualified immunity for Defendant Mason for use of excessive force, that earlier ruling does not apply to the current motion, which is made by a local government. A local government has no qualified immunity. *Owen v. Independence*, 445 U.S. 622, 638 (1980).

*Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014), reiterated the teaching of *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163 (1993), that there is no heightened pleading requirement for Section 1983 cases against a local government. *Leatherman* held that it "is impossible to square the 'heightened pleading standard' applied by the

Fifth Circuit in this case with the liberal system of 'notice pleading' set up by the Federal Rules." *Leatherman*, 507 U.S. at 168.

A requirement that James Hughey plead his own actions leading up to his being beaten is a heightened pleading requirement. *Johnson* and *Leatherman* hold that such a requirement cannot be imposed in favor of a local government.

Since the federal rules require only "notice pleading," *Johnson*, 574 U.S. at 12, Hughey has adequately alleged that James Hughey was assaulted, that excessive force was used, and that James Hughey's person was unreasonably seized. Hughey has, therefore, stated sufficient facts to make a plausible claim, that Defendant County may be held liable on several legal theories. In fact, Hughey's first amended complaint is far more detailed than the allegations in *Leatherman*. In *Leatherman*, according to the Supreme Court, the plaintiff had pled only that the county was liable because, on one occasion, a county officer had assaulted the plaintiff, and, on another occasion, another officer had shot the plaintiff's dog. *Leatherman*, 507 U.S. at 165. According to *Leatherman*, this was sufficient to state a cause of action under notice pleading against a county. *Johnson* reaffirmed *Leatherman*.

Hughey will now discuss the legal theories, ratification and custom, which have been pled.

**Ratification**

Hughey's first amended complaint [Doc. 112] pleads that "[a]s the official law enforcement policymaker for Tippah County, the Sheriff ratified the beating by continuing to retain Defendant Mason as a law enforcement officer, and not disciplining him for the beating of James Hughey." First Amended Complaint, ¶ 15 [112].

Defendant County retained Defendant Mason in employment despite the fact that Defendant

Mason had beaten other arrestees on nine (9) other occasions. According to the first amended complaint, the sheriff knew, or reasonably should have known, of the above assaults. First Amended Complaint, ¶ 4 [112].

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), holds that if the authorized policymakers approve of a subordinate's decision and the basis for it, the ratification may be charged to the municipality. The sheriff is, of course, the authorized final decision maker for Defendant County. *Huddleston v. Shirley*, 787 F. Supp. 109, 112 (N.D. Miss. 1992). This makes the sheriff's official actions the actions of those of Defendant County under *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

It is plausible that discovery will reveal that the sheriff ratified the beatings by failure to remove Defendant Mason as a deputy and by failing to discipline Defendant Mason as a deputy. Instead of retaining Defendant Mason as a deputy, the sheriff should have arrested him, because Defendant Mason's acts, under color of state law, to inflict serious injury upon a citizen, are crimes under both state law, MISS. CODE ANN. § 97-3-7(1)(a), and under federal law, 18 U.S.C. § 242.

**Custom**

Besides pleading ratification, Hughey has also pled the existence of a custom of assaults by Defendant Mason. The seminal case *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978), holds that a municipality may be liable for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."

In this case, Hughey has alleged nine (9) specific incidences of use of unreasonable force. There is no requirement that Hughey prove these violations or make any heightened pleadings

regarding how those incidences specifically occurred in his first amended complaint. Rather, it is sufficient that Hughey has pled that nine (9) such incidents have occurred, and it is plausible that discovery may reveal that the sheriff had actual knowledge of all of the assaults.

This Court should not, at this stage, engage in any heightened pleading requirement by requiring any specific pleading regarding each beating. Rather, this Court should permit discovery so that Hughey can establish the custom of Defendant Mason's beating arrestees. "[M]unicipal custom can sometimes be proven through evidence of a persistent pattern of conduct." *Milam v. City of San Antonio*, 113 F. App'x 622, 625 (5th Cir. 2004).

**Failure to Train**

Hughey's first amended complaint does not contain a failure to train legal theory. Hughey attempted to cure this oversight with a proposed second amended complaint, which alleges:

> Defendant Tippah County, Mississippi is liable because Defendant Mason's repeated assaults before the assault on James Hughey were known to Sheriff Gaillard, who should have either refused to hire Defendant Mason or should have disciplined him when he learned of this assault, or should have trained him against the use of excessive force. The many assaults mean that Defendant Mason's acts were a custom of Defendant Tippah County, Mississippi. The county and Sheriff Gaillard's hiring, failing to train, and failing to discipline Defendant Mason represented a deliberate indifference to the rights of James Hughey and of the public, and constituted a proximate cause of all of James Hughey's injuries.

Proposed Second Amended Complaint, ¶ 23(d) [Doc. 135-1].

The Magistrate Judge denied the proposed second amended complaint because the "deadline for motions to amend the pleadings having passed in 2018, the plaintiff's motion is untimely. . . .," and that the amendment would prejudice Mason, "who has already gone through the time and expense of moving for judgment on the pleadings in response to the original complaint, the plaintiff's *Schultea* reply, and the first amended complaint." Order Denying Motion for Leave to

File Second Amended Complaint, pp. 2, 4 [Doc. 151]. This reliance on the pleadings filed by Defendant Mason does not apply to the present motion filed by Defendant County.

As explained in *Johnson v. City of Shelby, Miss*., 574 U.S. 10, 11 (2014), a plaintiff whose complaint has been dismissed for a pleading defect must be allowed to amend. This is true when the dismissal is at the summary judgment stage and after the scheduling order has expired. Thus, the Magistrate Judge's denial of the motion to file second amended complaint is not authority for the denial of allowing the second amended complaint. The Magistrate Judge's order was entered in response to Hughey's motion to file second amended complaint. The issue here is whether an amendment should be allowed if the Court grants Defendant County's Motion for Judgment on the Pleadings.

If this Court grants Defendant County's Motion for Judgment on the Pleadings, *Johnson* controls and permits an amendment, if an amendment is necessary.

The Fifth Circuit holds that as long as a pleading alleges facts upon which relief can be granted, the complaint states a claim "even if it fails to categorize correctly the legal theory giving rise to the claim." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir. 1981); *accord*, *Johnson*, quoting a leading commentator, who wrote: "The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief." *Johnson*, 574 U.S. at 12.

The first amended complaint, even without the failure to train legal theory, does contain enough facts from which Defendant County could reasonably infer liability for a failure to train. The first amended complaint alleges not only nine (9) previous beatings by Defendant Mason [Doc. 112], but also pleads that the particular beating in this case involved "kick[ing] and beat[ing] James

Hughey, fracturing several ribs and endangering his life by rupturing James Hughey's spleen." First Amended Complaint, ¶ 9 [Doc. 112].

"[A] single incident of excessive force can establish the existence of an inadequate training program if there is some other evidence of the program's inadequacy." *Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000). From the facts alleged in the first amended complaint, it is plausible that a jury could find that this single incident of excessive force, together with nine (9) previous incidents and together with whatever evidence of inadequate training may be developed in discovery, will be sufficient to show a willful indifference to the public safety by failing to train.

A failure to train legal theory should also be allowed for practical reasons. When a motion to dismiss is sustained, the plaintiff should normally be given at least one opportunity to file an amendment to cure the defect. *See*, *e.g.*, *Moore as next friend of Z.S. v. Clarksdale Mun. Sch. Dist.*, 2022 WL 17420383, *1 (N.D. Miss. 2022) ("because Moore's complaint fails to adequately allege facts regarding certain other claims raised in the motions to dismiss, the motions to dismiss will be granted in part and Moore will be allowed the opportunity to seek leave to amend her complaint" ; and *Jenkins v. Rankin Cnty., Mississippi*, 2024 WL 3526903, *11 (S.D. Miss. 2024) (holding that where it is not clear that plaintiffs "have pleaded their best case," they should seek leave to amend a dismissed complaint.

Here, the fact that Hughey's proposed second amended complaint sought to add a failure to train theory, and that this is not contained in Hughey's first amended complaint, demonstrates that Hughey has not pled his "best case" against Defendant County. Thus, Hughey should be allowed to amend to plead this legal theory if the Court finds that the pleading of such a legal theory is required.

*Johnson*, 574 U.S. at 11, held that the Federal Rules of Civil Procedures "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," but held even if the first amended complaint was defective for an "imperfect statement of the legal theory," the plaintiffs "should be accorded an opportunity to add to their complaint. . . ." a necessary amendment since the "federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief." *Johnson*, 574 U.S. at 12.

The Supreme Court in *Johnson* reversed the Fifth Circuit, *Johnson v. City of Shelby, Miss.*, 743 F.3d 59 (5th Cir. 2013), cert. granted, judgment rev'd, 574 U.S. 10 (2014), which had upheld the this Court's (District Judge Mills) holding that a plaintiff could not amend his complaint after summary judgment was requested, since the deadline in the case management order had expired. *Johnson*, 743 F.3d at 63.

By reversing the Fifth Circuit in *Johnson*, the United States Supreme Court, in a controlling decision, has held that when a case is dismissed for a pleading defect, a plaintiff must be allowed to amend to cure that pleading defect, even though the amendment deadline has expired. Otherwise, the Supreme Court would not have reversed the Fifth Circuit's opinion in *Johnson*.

Hughey respectfully requests that this Court find the first amended complaint is sufficient to allow proof of a failure to train legal theory. However, if it is necessary to add a failure to train theory, this Court should allow the filing of the second amended complaint since the fact that the amendment deadline has expired, does not, under *Johnson*, permit denial of such an amendment. Such a ruling does not conflict with the Magistrate Judge's order's denying the motion to file second amended complaint, since that ruling was made in the context of Hughey's moving to file a second

amended complaint. It was not made in the context of a defendant's having moved for judgment on the pleadings. According to *Johnson*, if such a motion be sustained, then Hughey must be given an opportunity to amend.

A failure to train theory is viable in light of *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), which held:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*City of Canton, Ohio*, 489 U.S. at 390 (footnotes omitted).

*Brown v. Bryan Cnty.*, OK, 219 F.3d 450, 463 (5th Cir. 2000), upheld a jury verdict, finding that a county was liable because the county sheriff had left his subordinate officers "essentially, unsupervised." *Brown* held: "It is clear that a municipality's policy of failing to train its police officers can give rise to § 1983 liability." *Brown*, 219 F.3d at 457. *Brown* upheld liability because a "jury could have found that the failure to train Burns was a decision that amounted to a County 'policy.'" *Brown*, 219 F.3d at 458.

In this case, it is plausible that discovery will show that Defendant County's law enforcement policy of providing no training against brutality likely accounts for the assault upon a person who did not know where he was or what he was doing.

## IV. **CONCLUSION**

Defendant Tippah County Mississippi's Motion for Judgment on the Pleadings should be denied.

RESPECTFULLY SUBMITTED, this the 1st day of October, 2024.

KAREN HUGHEY, Conservator for James Allen Hughey, Plaintiff

By: */s/ Jim Waide*

Jim Waide, MS Bar No. 6857
waide@waidelaw.com
Rachel Pierce Waide, MS Bar No. 100420
rpierce@waidelaw.com
Yance A. Falkner, MS Bar No. 106107
yfalkner@waidelaw.com
WAIDE & ASSOCIATES, P.A.
332 North Spring Street
Tupelo, MS 38802-3955
Post Office Box 1357
Tupelo, MS 38802-1357
(662) 842-7324 / Telephone
(662) 842-8056 / Facsimile

R. Shane McLaughlin, MS Bar No. 101185
rsm@mclaughlinlawfirm.com
McLAUGHLIN LAW FIRM
Post Office Box 200
Tupelo, MS 38802
(662) 840-5042 / Telephone
(662) 840-5043 / Facsimile

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This will certify that undersigned counsel for Plaintiff has this day filed the above and foregoing with the Clerk of the Court, utilizing the federal court electronic case data filing system (CM/ECF), which sent notification of such filing to the following:

**William R. Allen, Esq.**
**Katelyn Adele Riley, Esq.**
**Allen, Allen Breeland & Allen**
**P.O. Box 751**
**Brookhaven, MS 39601-0751**
**wallen@aabalegal.com**
**swilson@aabalegal.com**
**kwallace@aabalegal.com**
**kriley@aabalegal.com**

**Daniel J. Griffith, Esq.**
**Arnulfo Ursua Luciano**
**Jacks Griffith Luciano, P.A.**
**P.O. Box 1209**
**Cleveland, MS 38732**
**dgriffith@jlpalaw.com**
**aluciano@jlpalaw.com**
**vsmith@jlpalaw.com**
**nmelton@jlpalaw.com**
**mhankins@jlpalaw.com**
**mpowell@jlpalaw.com**
**jjacks@jlpalaw.com**

DATED, this the 1st day of October, 2024.

*/s/ JIM WAIDE*
JIM WAIDE