IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**KAREN HUGHEY,**
**Conservator for James Allen Hughey**                                            **PLAINTIFF**

**V.**                                                **CIVIL ACTION NO: 3:18-CV-4-GHD-RP**

**TIPPAH COUNTY, MISSISSIPPI,**
**TOMMY MASON, in His Individual Capacity,**
**and "X" Bonding Company**                                                   **DEFENDANTS**

---

**PLAINTIFF'S MEMORANDUM BRIEF IN SUPPORT OF MOTION TO REVISE JUDGMENT AND MEMORANDUM OPINION**

---

Plaintiff Karen Hughey, Conservator for James Allen Hughey, submits this Memorandum Brief in Support of her Motion to Revise This Court's Order [Doc. 132], and Memorandum Opinion of July 2, 2024 [Doc. 131], and shows the Court the following:

A judgment which does not dispose of all claims and adjudicate the rights of all parties "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b); e.g., *Renfroe v. Parker*, 2019 WL 3806641 *1 (S.D. Miss. 2019), affirmed, 974 F.3d 594 (5th Cir. 2020).

One ground for such a revision of a judgment is where a "significant change in the law or facts has occurred since the submission of the issue to the Court." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

In this case, the Court granted qualified immunity on the Fourth Amendment excessive force claim in favor of Defendant Mason. This Court found that Plaintiff pled insufficient facts showing

James Allen Hughey's conduct immediately preceding Hughey's being beaten by Defendant Mason.

Specifically, this Court wrote:

> The Plaintiff's version of events, as described in the Complaint, leave major gaps regarding Mr. Hughey's own conduct. Other than the fact that he entered the wrong home that was formerly occupied by his ex-girlfriend and that he plead guilty to burglary, the Plaintiff did 'not plead any facts regarding his own conduct during the incident.' *Jackson v. City of Beaumont Police Dep't*, 958 F.2d, 616, 621 (5th Cir. 1992). The 'Plaintiff must plead facts about his own actions during the apprehension so the Court can assess whether the Officer employed force that was disproportionate to the need . . .' *Palmer v. City of El Paso*, 2023 WL 3066218 *6 (W.D. Tex. April 24, 2003) (citing *Jackson*, 958 F.2d at 621).
>
> Similar to the plaintiff in *Jackson*, the Plaintiff here provides no facts regarding his own conduct during the incident or any other factors leading to and surrounding his arrest and other alleged actions by Defendant Mason. It is not possible to tell from the First Amended Complaint whether Officer Mason injured Mr. Hughey in the process of restraining and arresting him, or if he was injured after he posed no further risk. This is important, as 'the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.' *Zimmerman v. Cutler*, 657 F. App'x 340, 347 (5th Cir. 2016) (quoting Graham, 490 U.S. at 396). 'The mere fact that the Officer inflicted enough force to seriously injury the [Mr. Hughey] does not necessarily mean that [he] exerted an amount of force that exceeded the need . . .' under the circumstances. *Palmer*, 2023 WL 3066218 *8.
>
> The Court is unable to find any facts from which to determine whether the officer's conduct was reasonable, and the Plaintiff's vague or missing allegations are insufficient to overcome the qualified immunity defense. The complaint offers nothing more than the conclusory allegation that Defendant Mason used excessive force, which, again, falls short of the precision and factual specificity required to overcome a qualified immunity defense."

[Doc. 131].

The Court referenced that Plaintiff had been given an opportunity to file a reply. The Reply

[Doc. 27] reads:

> Hughey did not provoke the beating. Because of Hughey's pre-existing health problems, and as a result of the trauma from the beating, Hughey has no substantive memory of the events after the beating. Hughey knows that Mason hit him multiple times with his fists. Hughey does not remember the other details of the assault as far as the means employed by Mason to inflict injury. Hughey is a diabetic and suffers

2

from elevated ammonia levels. As a result of this, and the beating, Hughey simply remembers that he knocked on the door, that Mason answered the door, and that Mason began beating him with his fists for no reason.

*Schultea* Reply to Qualified Immunity [Doc. 27], as ordered by this Court on July 2, 2018.

However, this Court's grant of qualified immunity on the single issue of use of excessive force against Mason did not end discovery. Other claims remained, including a claim of assault. Because the granting of qualified immunity did not dispose of those other issues, Plaintiff was then finally able (after years of the case being stayed) to take Mason's deposition on October 4, 2024. In that deposition, Mason gave the following pertinent testimony:

> Q. And you didn't -- but you didn't -- did I understand that you went onto the front porch?
> A. Yes, sir.
> Q. So you didn't see him when you first got there?
> A. No, sir.
> Q. Was he crouched down or was he standing up?
> A. Well, he was standing, but, like, kind of – just kind of crouched, you know. He was right between the front porch and in between the – there was some, like, tall bushes on one side there. I guess you would just have to see it, but he was in between the bushes and the porch.

Deposition of Tommy Mason, p. 13, Exhibit "A."

> A. Yes. Well, when I was on the porch. When I ran to see, you know, if I could find him or whatever – when I went up on the porch, that's when I saw him.
> Q. I would assume you would have run after him at that point, wouldn't you, when you saw him?
> A. Yes, sir. Well, we were just right there. Right there.
> Q. So you were really close to him already?
> A. Yes. Like, startling close.
> Q. What did you do when you saw him?
> A. I jumped off the porch onto him.

Deposition of Tommy Mason, pp. 13-14, Exhibit "A."

> A. Well, I was just running. I didn't know where he was until I seen him

>whenever I was on the porch. It's not like I pulled up and saw him. I didn't see him until –

Deposition of Tommy Mason, p. 14, Exhibit "A."

>Q. Look down about the – well, about – it's over half the page, maybe three-quarters of the way down, and it has a statement, As I ran toward him, he took an aggressive posture, and I jumped off the porch onto him to try and subdue him. Do you see that sentence?
>A. Hold on a second, sir.
>Q. Want me to show you?
>A. Sure.
>Q. See right there, As I ran toward him?
>A. Okay. Let me just get the full context right quick.
>Q. Okay.
>A. (Witness reviewed document.)
>Q. Let me ask you this just so we'll be straight on the record. This is a statement. Did you type this statement or did you dictate it or did you handwrite it and somebody type it or how –
>A. I just typed it on my notes on my phone.

Deposition of Tommy Mason, p. 16, Exhibit "A."

>Q. I'm going to let you be him, and you show me how he did an aggressive posture. Stand up, if you would, because –
>MS. RILEY: I'm going to object.
>A. I don't think I would be very good at being him.
>MS. RILEY: He wasn't the one taking the posture. He was just observing it. There's no reason to believe he can mimic the same posture of a man with a different build.
>MS. TARPLEY: From seven years ago.
>MR. WAIDE: All I want is the physical –
>MS. RILEY: We can use our words.

Deposition of Tommy Mason, p. 21, Exhibit "A."

>Q. (Mr. Waide) Can you show me what he did?
>MS. RILEY: Same objection.
>Q. (Mr. Waide) Can you stand up and show me what he did?
>A. No, sir. I can't.

Deposition of Tommy Mason, pp. 21-22, Exhibit "A."

>Q. (Mr. Waide) Can you recreate? So you can't describe it. You can't

4

| | |
|---|---|
| | describe it in words, so I'm asking you to show me. |
| A. | I can't recreate it to make it look like his. No, sir. |
| Q. | You can't give us any description of what it was he did that was aggressive? |
| | MS. TARPLEY: Object to the form. |
| Q. | (Mr. Waide) Sir? |
| A. | I can't show you how he was aggressive. You know, I can't mimic his aggressive posture, but I can just tell you if it was forward movement to me at the time, that's aggressive posture. Yelling is aggressive posture. |
| Q. | I see. You say if it was forward movement, right? |
| A. | Yeah, in any situation like that. |
| Q. | All right. There's nothing in your statement about it being forward movement, is it? |
| A. | No, sir. Not that I've read. |
| Q. | Can you show me – can you show me? You say you jumped on him, correct? |
| A. | Yes, sir. I jumped off the porch onto him. There was no other way to get to him. |
| Q. | All right. What I would like to know is what physically -- his body, what parts of his body hit the ground or did his body hit the ground or did you just jump on him and he keep standing? |
| A. | We both hit the ground. |
| Q. | So he would have hit the ground first and you jumped on him, right? |
| A. | Yes, sir. |
| Q. | Can you show me physically how he hit the ground? |
| A. | No, sir. I can't. |

Deposition of Tommy Mason, pp. 22-23, Exhibit "A."

| | |
|---|---|
| Q. | Well, you said it was in the statement. You said, I fought him. |
| A. | The only thing that was -- would be considered any kind of fight would be, like, when I jumped off on him, his natural reaction was probably, you know, grab my -- grab me by my legs, you know. |
| Q. | So he grabbed you by your legs? Did you get any medical treatment? |
| A. | No, sir. I didn't. |
| Q. | Now, this -- your statement has the word fought, F-O-U-G-H-T. When I think of fought, I think about, like, boxing or – now it's gotten to be all this – I forget what you call it – MGM (sic) fighting or whatever it was. But I think of fighting as boxing. That means hitting. That's what it means to me. |
| A. | No. There wasn't any MMA going on. |
| Q. | What about fighting? |
| A. | No. When I say fought with somebody, in law enforcement, if they |

5

| | |
|---|---|
| | fought with us, you know, if they jerk away, that's fighting. |
| Q. | Well, you said in this statement I fought. You say I fought. That's what it says, I fought. Is that true? Did you fight? |
| A. | I just fought to get my legs free. That's it. |
| Q. | Well, this doesn't say anything about getting your legs free. Your statement says – and look at it – I fought him to get him restrained. That's what it says. |
| A. | Yeah. That would be just, you know – |
| Q. | Why did you need to fight him? |
| | MS. RILEY: Hold on. Let him finish his answer. |
| A. | That would just be part of the scuffle of getting up – getting off the ground and getting him handcuffed. |

Deposition of Tommy Mason, pp. 25-26, Exhibit "A."

In substance, drawing all inferences in favor of Plaintiff, the jury can infer from Mason's testimony that at the time Mason saw Hughey, Hughey was standing in a crouched position. Mason then jumped onto Hughey from a porch, and "fought" Hughey. In his deposition, Mason could not or would not describe any Hughey mannerisms that would warrant any use of force, however slight.

Mason's testimony does not refute the deposition of Karen Hughey that Mason attacked James Hughey because James had earlier broken into Mason's ex-wife's house:

| | |
|---|---|
| Q. | Okay. Did you speak with Tommy? |
| A. | No. Other - - the only thing I - - the only thing that was said to me from Tommy, I mean, I did speak to him when we were leaving when he was getting in his truck and I was to the side, I did. I did say, um, Why did you beat him like that for? You didn't have to beat him like that. His exact words was, He shouldn't fuckin' break into somebody's house. |

Deposition of Karen Hughey, p. 46, Exhibit "B."

Thus, Karen Hughey's deposition corroborated Tommy Mason's deposition. Under Mason's deposition, a jury may infer that James Hughey was doing nothing at the time Mason jumped on him.

In conducing a review for a motion of judgment on the pleadings, the Court considers only

6

the allegations in the Complaint, matters of public record, and any documents attached to the Complaint." *Cinel v. Connick*, 15 F.3d 1338, 1341, (5th Cir. 1994).

Accordingly, Plaintiff respectfully requests that the Court, in considering this Motion, permit Plaintiff to file an Amended Complaint, making as its only change, the attachment of the depositions of Tommy Mason (Exhibit A) and Karen Hughey (Exhibit B). Since Plaintiff's Complaint alleges a life-endangering injury inflicted by Mason, and since Mason's deposition establishes that James Hughey did nothing to warrant any level of force, even slight, the Complaint states a claim.

A grant of qualified immunity on the excessive force case is implicitly inconsistent with *McCoy v. Alamu,* ___ U.S. ___, 41 S. Ct. 1364 (2021). There, the United States Supreme Court summarily reversed a grant of qualified immunity when a correctional officer had used pepper spray on an inmate for no reason. The Fifth Circuit granted qualified immunity on the ground that the "particular conduct at issue. . . ." had not previously been determined to be held unconstitutional. *McCoy v. Alamu*, 950 F.3d 226, 234 (5th Cir. 2020), cert. granted, judgment vacated, 141 S. Ct. 1364 (2021).

This case involves not the mere use of pepper spray, but an injury so serious that the cognitively impaired James Hughey nearly died. If an allegation that an officer pepper sprayed an individual for no reason is sufficient to constitute a constitutional claim, then a claim that one's ribs have been broken and his spleen lacerated for no reason is also sufficient to settle a claim.

## **CONCLUSION**

This Court should reconsider and find that there is "good cause" for Plaintiff to file an Amended Complaint attaching the depositions of Tommy Mason and Karen Hughey. The Complaint will, thereby, state a claim which is "plausible on its face." There is good cause to allow the amendment since the deposition had not been taken when the Court ruled.

RESPECTFULLY SUBMITTED, this the 4th day of November, 2024.

        KAREN HUGHEY, Conservator for James Allen Hughey, Plaintiff

By:   */s/ Jim Waide*
      Jim Waide, MS Bar No. 6857
      waide@waidelaw.com
      Rachel Pierce Waide, MS Bar No. 100420
      rpierce@waidelaw.com
      Yance A. Falkner, MS Bar No. 106107
      yfalkner@waidelaw.com
      WAIDE & ASSOCIATES, P.A.
      332 North Spring Street
      Tupelo, MS 38802-3955
      Post Office Box 1357
      Tupelo, MS 38802-1357
      (662) 842-7324 / Telephone
      (662) 842-8056 / Facsimile

      R. Shane McLaughlin, MS Bar No. 101185
      rsm@mclaughlinlawfirm.com
      McLAUGHLIN LAW FIRM
      Post Office Box 200
      Tupelo, MS 38802
      (662) 840-5042 / Telephone
      (662) 840-5043 / Facsimile

      ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

This will certify that undersigned counsel for Plaintiff has this day filed the above and foregoing with the Clerk of the Court, utilizing the federal court electronic case data filing system (CM/ECF), which sent notification of such filing to the following:

**William R. Allen, Esq.**
**Katelyn Adele Riley, Esq.**
**Allen, Allen Breeland & Allen**
**P.O. Box 751**
**Brookhaven, MS  39601-0751**
wallen@aabalegal.com
swilson@aabalegal.com
kwallace@aabalegal.com
kriley@aabalegal.com

**Daniel J. Griffith, Esq.**
**Arnulfo Ursua Luciano**
**Jacks Griffith Luciano, P.A.**
**P.O. Box 1209**
**Cleveland, MS  38732**
dgriffith@jlpalaw.com
aluciano@jlpalaw.com
vsmith@jlpalaw.com
nmelton@jlpalaw.com
mhankins@jlpalaw.com
mpowell@jlpalaw.com
jjacks@jlpalaw.com

DATED, this the 4th day of November, 2024.

/s/ JIM WAIDE
JIM WAIDE